IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**WILLIE MAPP**,                                          CASE NO. 2:12-cv-1039

          **Petitioner,**                              JUDGE EDMUND A. SARGUS, JR.

v.                                                        Magistrate Judge Kemp

**STATE OF OHIO,**.

          **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on petitioner's original pleading, styled as a complaint (Doc. 4), his "Memorandum in Support of Plaintiff Willie Mapp in the Recharacterizing Petition Under 28 U.S.C. 2254" (Doc. 9), respondent's return of writ, and the exhibits attached to the return.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that petitioner's claims be **DISMISSED**.

### I.  PROCEDURAL HISTORY

This case stems from a second indictment returned against petitioner by the Union County, Ohio grand jury.  The first indictment, filed on March 27, 2008, charged petitioner with thirteen counts of sexual battery, all involving inmates at the Ohio Reformatory for Women, where petitioner was employed as a corrections officer.  That case was withdrawn by the prosecutor when witnesses failed to appear for trial.  *Return of Writ,* Exhibit 3.

After the dismissal of the first case, the grand jury returned a second indictment in February, 2009.  The indictment again charged petitioner with thirteen counts of sexual battery.  Petitioner pleaded not guilty and was tried by a jury.  On August 31, 2010, the jury convicted him of eight counts of sexual battery. On November 2, 2010, the trial judge overruled post-judgement motions for a mistrial, a new trial, and for acquittal.  *Return of Writ*, Exhibit 28.  In a journal entry filed on November 16, 2010,  the trial judge sentenced petitioner to an aggregate of twenty-four years in prison, consisting of three years on each of the eight counts, run consecutively,  plus five years of post-release control.  He was also required to register as a Tier III sex offender. *Return of Writ*, Exhibit 30.

Represented by new counsel, petitioner timely appealed his conviction to the Court of Appeals for the Third Appellate District.  He raised four assignments of error, as follows:

> 1.  THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION FOR A MISTRIAL, MOTION FOR A NEW TRIAL, AND A RENEWED MOTION FOR ACQUITTAL BASED ON THE APPELLEE'S FAILURE TO SECURE AND PRESERVE KEY EVIDENCE..
>
> 2.  APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED WHEN THE APPELLEE WITHHELD POSSIBLE BRADY EVIDENCE..
>
> 3.  THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION TO DISMISS THE MATTER ON SPEEDY TRIAL GROUNDS.
>
> 4.  THE TRIAL COURT ERRED WHEN IT SENTENCED APPELLANT TO CONSECUTIVE SENTENCES.
> .

2

*Return of Writ*, Exhibit 33.  In a decision dated September 6, 2011, the Third District Court of Appeals overruled all four assignments of error and affirmed petitioner's conviction. *Return of Writ*, Exhibit 35; *State v. Mapp*, 2011 WL 3890522 (Union Co. App. Sept. 6, 2011).

Petitioner did not timely appeal that decision to the Ohio Supreme Court.  He did, however, filed a motion for leave to file a delayed appeal.  *Return of Writ,* Exhibit 38.  He asserted as cause repeated closings of the law library at his institution.  The Ohio Supreme Court granted his motion to file a delayed appeal.  *Return of Writ,* Exhibit 39; *State v. Mapp*, 131 Ohio St.3d 1408 (2011).   However, petitioner did not file a memorandum in support of jurisdiction, and the appeal was dismissed for failure to prosecute.  *Return of Writ,* Exhibit 40; *State v. Mapp*, 131 Ohio St.3d 1462 (2012).

On January 3, 2012, while his direct appeal was pending, petitioner filed an untimely motion with the Third District Court of Appeals to reopen his appeal under Appellate Rule 26(B).  He asserted, as cause for his untimely filing, the fact that he had incorrectly addressed the motion, and that by the time the postal service returned it to him, the 90-day period for filing such a motion had passed.  *Return of Writ*, Exhibit 41.  He sought to raise two claims of ineffective assistance of counsel, one relating to appellate counsel's failure to argue an issue about a speedy trial violation, and the second relating to appellate counsel's failure to make specific arguments about the imposition of consecutive sentences.  In an entry filed on February 15, 2012, the appellate court overruled his motion, noting that it was not timely filed and that "an incorrectly

addressed envelope does not show good cause for the application being filed untimely. See App.R. 26(B)(1) and 26(B)(2)(b)." *Return of Writ*, Exhibit 43.  Alternatively, the state appellate court held that the two assertions of error lacked merit.  Petitioner filed a timely appeal of that decision, but the Ohio Supreme Court dismissed the appeal "as not involving any substantial constitutional question." *Return of Writ,* Exhibit 47.

On November 9, 2012, petitioner filed a motion for leave to proceed *in forma pauperis* in this Court.  He did not file a pleading with that motion.  In response to a Court's order filed on November 14, 2012, pointing out this deficiency, petitioner filed a complaint, which the Court characterized as a petition for a writ of habeas corpus because it raised claims relating to the validity of petitioner's conviction and sentence. The Court gave petitioner the opportunity to object to this characterization, but he did not.  Rather, on March 4, 2013, he filed a document which he titled "Memorandum in Support of Plaintiff Willie Mapp in the Recharacterizing Petition under 28 U.S.C. 2254." (Doc. 9).  The attachment to that document is the same memorandum in support of jurisdiction which he filed with the Ohio Supreme Court.  *See Return of Writ*, Exhibit 45. He has also filed multiple motions for the appointment of counsel.

It is unclear if petitioner is intending to raise all of the claims found in his complaint as well as the ones found in his supplemental filing.  The latter filing raises only those two claims which the Third District Court of Appeals refused to hear when it dismissed petitioner's Rule 26(B) motion to reopen as untimely.  The former raises a number of fairly vague claims, which, as petitioner has stated them, are:

4

    1.  Ineffective assistance of counsel;

    2.  Key evidence of testimony;

    3. Allied offense consecutive sentences that resulted in 24 years as opposed to (1) cc 3 yrs;

    4.  Violation of the 8th, 4th 14th Amendments;

    5.  Continuous errors of trial court;

    6.  Was not allowed sovereign immunity as being a State of Ohio (DRC) employee;

    7.  Request for Supreme Court to hear case on merits;

    8.  Request this District Court to modify sentence on merits 2929.41;

    9.  Request this court to modify consect (sic) sentence to concurrent.

As relief, he asks the Court to remand the case to the state trial court for a new trial on the merits, and, again, to modify his sentences so that they run concurrently.  He has presented no supporting argument in connection with any of these claims.  *See* Doc. 4.

    As this procedural history demonstrates, petitioner was not successful in presenting any of his claims to the Ohio Supreme Court for a review of their merits. Respondent argues that all of petitioner's claims, whether those found in his complaint or those asserted in his supplemental filing, have been procedurally defaulted.  For the reasons which follow, this Court agrees and will recommend that the case be dismissed for that reason.

## II.  FACTS

The facts of this case are not particularly important in deciding if petitioner has procedurally defaulted all of his claims. A short summary can be found in the state court of appeals' decision, *see State v. Mapp*, 2011 WL 3890522 (Union Co. App. Sept. 6, 2011). It suffices to say that petitioner was indicted for and convicted of multiple counts of sexual battery based upon the fact that, while a corrections officer at the ORW, he forced several female inmates into a restroom and directed them to perform oral sex on him. The first time the case came up for trial, a number of the victims, who had been subpoenaed, called the prosecutor expressing travel difficulties, leading the State to dismiss the case. It had taken four years to obtain the initial indictment and another few months passed until the second indictment was returned. Those circumstances led to some speedy trial challenges. Also, the state presented conflicting evidence about whether there were any videotapes of the restroom in question. The trial judge eventually struck all of the testimony about videotapes, but the possible existence or destruction of such tapes was one of the issues which petitioner raised in state court. Finally, there was the matter of consecutive sentences; the trial court chose an intermediate sentence on each count (the maximum sentence for sexual battery is five years) but ran those sentences consecutively. Petitioner also took issue with that decision in some of his later state court filings.

### III.  PROCEDURAL DEFAULT

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular

claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process.  Procedural default can be a fairly complicated doctrine, involving a number of court-made rules and exceptions, but the basic premise is simple and is reflected in the language Congress has used in 28 U.S.C. §2254.

Under §2254, a federal court may grant relief to a state prisoner only if that person is being held in custody in violation of the Constitution or law of the United States - that is, that the prisoner's conviction or sentence was unlawful under federal law.  In order for a federal court to decide any such claims on their merits, "the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  That is so because §2254(b) states that an application for a writ of habeas corpus filed by someone in petitioner's position "shall not be granted" unless "the applicant has exhausted the remedies available in the courts of the State ...."

So what does it mean to exhaust such remedies?  *O'Sullivan*, a decision from the United States Supreme Court, held that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *Id*. at 845.  In particular, in states like Ohio, where the last avenue of review is a discretionary appeal to the state's highest court, a prisoner must ask that court to review his or her claims as long as that is "part of the ordinary appellate review procedure ...."  *Id*. at 847.

7

Just asking for such review is not enough, however. The habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case - that is, they are "procedurally defaulted."

*Wainwright* makes clear, however, that the state procedural rule which was not followed, and which led the state courts to reject a petitioner's claims other than on the merits, must constitute an "adequate and independent state ground" for the state courts' decision. *See id*. What that means, in practice, is that whatever state procedural rules that the state courts invoked must "serve[] a legitimate state interest," *Henry v. Mississippi*, 379 U.S. 443, 447 (1965), and the state must regularly enforce those rules against litigants. As the Court of Appeals has said, "[t]he adequacy of a state procedural bar turns on whether it is firmly established and regularly followed ...." *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005). But when a petitioner for habeas corpus relief does not follow a state procedural rule which serves important state interests; does not get a hearing on the merits of his federal claims because he did not follow that rule; and the rule is one which the state courts regularly enforce against similarly-

8

situated litigants, this federal court cannot consider his claims on their merits.

There are exceptions to this rule, of course. Sometimes a state prisoner is prevented from following a state procedural rule due to circumstances completely beyond his control, such as the state's affirmative efforts to block him from complying with the rule, or errors of counsel which are so egregious that they violate the constitutional right to effective assistance of counsel. *See, e.g., Murray v. Carrier*, 477 U.S. 478 (1986). When that happens, and when the petitioner can show that the claim has some potential merit, he is said to have satisfied the standard set forth in *Wainwright, supra,* of showing "cause and prejudice" to excuse a procedural default. Such a default can also be excused if a petitioner shows that he is probably innocent of the crime he has been found guilty of committing. *See Schlup v. Delo*, 513 U.S. 298 (1995). But if a petitioner cannot make these showings, the procedural default doctrine requires that his claims be dismissed. With this background in mind, the Court turns to an analysis of each of the two attempts made by petitioner to bring his claims before the Ohio Supreme Court.

## A. The Direct Appeal

Petitioner's direct appeal failed because he did not file a memorandum in support of jurisdiction. Under the Ohio Supreme Court's rules of practice (formerly Rule II(A)(1)), a notice of appeal from a decision of an Ohio appellate court must be filed within 45 days of the entry of that decision and must be accompanied by a memorandum in support of jurisdiction. The Ohio Supreme Court routinely applies

9

this rule to strike untimely filings and to dismiss appeals. *See, e.g., Crise v. Cleveland*, 98 Ohio St.3d 1481 (March 11, 2003). The Court of Appeals has found this rule to be an adequate and independent ground for dismissing an appeal under Ohio law. *See Smith v. State of Ohio Department of Rehab. and Corr.*, 463 F.3d 426, 431-32 (6th Cir. 2006)("We have previously held that denial of review on the basis of Rule II § 2(A)(4)(a) is an adequate procedural ground to foreclose federal habeas review"). Because the Ohio Supreme Court actually relied on this rule in dismissing petitioner's appeal, all of the grounds for enforcing a procedural default have been met. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Further, petitioner has offered no explanation for his failure to file a memorandum in support of jurisdiction. Therefore, any issues which either were raised, or could have been raised, in his direct appeal have been procedurally defaulted.

### B. The Rule 26(B) Motion for Reopening

The second state rule which petitioner failed to follow is the requirement that he file any Rule 26(B) motion for reopening within 90 days of the date that the state appellate court makes its ruling. Rule 26(B) clearly contains this requirement, and petitioner does not contend otherwise. Ohio is allowed to have such a rule, because it serves important state interests in making sure that criminal proceedings are completed in a timely fashion. The Court of Appeals has stated, authoritatively, that "Rule 26(B) is an adequate and independent ground on which to find procedural default." *Wogenstahl v. Mitchell*, 668 F.3d 307, 322 (^th Cir. 2012). Ohio courts will excuse an untimely filing

based on a showing of good cause, but the fact that they do so in some cases does not mean that the rule requiring the filing of such a motion within 90 days of the state court's decision is not followed on a regular basis. "Since 1996, 'Ohio law has provided sufficient guidance on what constitutes a 'good cause' for a late filing under Rule 26(B),' and 'the time constraints of Rule 26(B) [have been] firmly established and regularly followed.' " *Id., quoting Hoffner v. Bradshaw*, 622 F.3d 487, 504-05 (6th Cir. 2010)(*quoting Parker v. Bagley*, 543 F.3d 859, 861 (6th Cir. 2008)). That means, as a practical matter, that when the Third District Court of Appeals decided not to allow petitioner to file his untimely motion to reopen his appeal, it was applying an adequate state procedural rule which is regularly followed in Ohio, and the claims which that court refused to hear for that reason - the two claims concerning ineffective assistance of appellate counsel, which petitioner also raised in his supplemental filing here - were procedurally defaulted.

      Petitioner has not argued here that he had a good reason for not filing his Rule 26(B) motion on time. He told the state appeals court, however, that the filing was late because he addressed it incorrectly but did not know he had done so until after the mailing came back, and that did not happen until after his time for filing a proper Rule 26(B) motion had expired.

      Petitioner may have an explanation for what happened, but that is not the same as proving "cause" for a procedural default. The Supreme Court has said that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner

can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). While it is true that petitioner had no control over how long the Postal Service took to return his mis-addressed motion, the same cannot be said for his original error in putting the wrong address on the envelope. Petitioner has not explained how that happened, nor claimed that the State of Ohio did something to mislead him into believing that he had correctly addressed his mailing. Only errors which "cannot fairly be attributed to" a petitioner will excuse a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Because the initial error which led to the untimely filing of petitioner's Rule 26(B) motion was his, and can be fairly attributed to him rather than to some objective and external factor, he simply cannot show the type of cause needed to excuse his procedural default.

There might be some question in petitioner's mind, however, about the significance of two things: the fact that the Third District Court of Appeals made an alternative ruling on the merits of his two claims of ineffective assistance of appellate counsel, and the fact that the Ohio Supreme Court did not really explain why it did not accept his appeal other than saying that it did not involve a substantial constitutional question. Neither of these prevented his ineffective assistance of appellate counsel claims from being defaulted, however.

The Ohio Supreme Court customarily declines to hear appeals in short orders which state only that the case does not involve a substantial constitutional question.

12

When that happens, this Court must look to the last state court decision which contains a statement of reasons to see if the default was enforced. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001)("In determining whether state courts have relied on a procedural rule to bar review of a claim, we look to the last reasoned opinion of the state courts and presume that later courts enforced the bar instead of rejecting the defaulted claim on its merits"), *citing Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). The last reasoned decision was the Third District Court of Appeals' decision holding that the Rule 26(B) motion was not timely filed. The fact that the same decision relied on alternative grounds, one of which was that the claims raised in the motion lacked merit, does not mean that the procedural default was not enforced; Supreme Court precedent, and specifically its decision in *Harris v. Reed*, 489 U.S. 255 (1989), "does not preclude a finding that the state procedural rule was actually enforced where the state court decision also relies on an alternative ground." *Scott v. Mitchell*, 209 F.3d 854, 865 (6th Cir. 2000). Relying on these precedents, this Court has consistently held that "an alternative ruling on the merits by a state appellate court of an otherwise waived claim does not forgive the waiver or otherwise revive the claim for purposes of habeas corpus review." *Johnson v. Bobby*, 2009 WL 3124423, *34 (S.D. Ohio Sept. 29, 2009). Consequently, these two claims, raised by petitioner's supplemental filing in this case, are also procedurally defaulted. Since petitioner failed properly to present any of his claims to the Ohio Supreme Court, he cannot raise any claims here, and his petition for a writ of habeas corpus must be dismissed.

13

## IV.  RECOMMENDED DISPOSITION

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus be **DISMISSED** and that the pending motion to reconsider the order denying petitioner's motion for appointment of counsel be denied. His more recent motion to appoint counsel (Doc. 17) is denied as well.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                           /s/ Terence P. Kemp
                                           United States Magistrate Judge